

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7334 | **DATE** | 10/18/2002 |
| **CASE TITLE** | Napoleon L. Keys vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. It is hereby ordered that Plaintiff's Motion for Summary Judgment be, and the same hereby is, **DENIED.** It is further ordered that Defendants' Cross-Motion for Summary Judgment be, and the same hereby is, **GRANTED.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | OCT 21 2002 | |
| | Docketing to mail notices. | | | date docketed | 33 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| AC | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| NAPOLEON L. KEYS, | ) | Case No. 01 C 7334 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Magistrate Judge |
|  | ) | Arlander Keys |
|  | ) |  |
|  | ) |  |
| JO ANNE B. BARNHART , | ) |  |
| Commissioner of Social Security[1], | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Napoleon L. Keys ("Napoleon"), moves this
Court for summary judgment, reversing the decision of the
Commissioner of the Social Security Administration
("Commissioner") to deny his application for Supplemental
Security Income for a minor.  Plaintiff argues that, because of a
change in Social Security Administration regulations, substantial
evidence did not support a denial.  In the alternative, Plaintiff
moves that this court either reverse the Appeals Council's

---

[1] Purusuant to Fed. R. Civ. P. 25(d)(1), Jo Anne Barnhart is
automatically substituted as Defendant in this case.

1

33

decision to deny review of the case based on new and material evidence, or remand the case to the Commissioner for further proceedings. The Commissioner has filed a cross-motion for summary judgment. For the reasons set forth below, the Court denies Plaintiff's Motion to Reverse the Appeals Council's decision, and denies Plaintiff's Motion to Reverse or Remand the Commissioner's decision. The Court grants the Commissioner's Motion for Summary Judgment.

## Procedural History

On May 5, 1997, Daisy Camino ("Ms. Camino") filed an application for Supplemental Security Income on behalf of Napoleon L. Keys, a minor.[2] (R. at 58-60.) Ms. Camino alleged that a learning disability and mental retardation had disabled Napoleon since January 1, 1990. (R. at 58, 64.) On November 26, 1997, the Social Security Administration denied Ms. Camino's application. (R. at 24-26.) Ms. Camino filed a request for reconsideration on January 5, 1998; on reconsideration, her application was again denied. (R. at 28, 29-31.) Ms. Camino then filed a request for a hearing before an Administrative Law

---

[2]Because of his parents' drug problems, Napoleon lived most of his life with his paternal grandfather and with Ms. Camino, who is now his legal guardian. Napoleon's grandfather died in 1996 and Napoleon regards Ms. Camino as his grandmother. (R. at 110, 212.)

Judge ("ALJ"), and on June 29, 1999, a hearing was held before
ALJ J. Robert Brown. (R. at 33, 208.) On August 25, 1999, the
ALJ issued his decision, finding that Plaintiff did not suffer a
"disability" as defined in the Social Security Act. (R. at 20.)
On October 4, 1999, Ms. Camino filed a Request for Review of the
ALJ's decision with the Commissioner's Appeals Council. (R. at
12.) Ms. Camino requested that the Appeals Council review the
case based on additional evidence. (R. at 12.) Attached to her
request, she submitted an 11-page psychological assessment of
Napoleon, the results of which were released *after* the
administrative hearing, but *before* the ALJ issued his decision.
(R. at 8.) The assessment included additional support for
Napoleon's disability claim. (R. at 8-11.) The Appeals Council
denied Ms. Camino's request on July 3, 2001, concluding that
there was no basis for review. (R. at 5.) The ALJ's decision
stands, therefore, as the final decision of the Commissioner.
That decision and the Appeals Council's denial of review are the
subject of the Motions now before the Court.

### Factual Background

### A. Testimony of Claimant and His Guardian

Napoleon L. Keys, the claimant, was born on September 14,
1983. (R. at 212.) At the time of the June 29, 1999 hearing,

Napoleon lived with his legal guardian, uncle, and younger
cousin.  (R. at 212.)  He had just completed ninth grade at
Hirsch Metro High School in Chicago.  (R. at 125, 213.)  Napoleon
had never been held back a grade and attended regular classes,
but each week he received 500 minutes of special education
services in math and English.  (R. at 185, 213, 220-21.)
Napoleon testified that his favorite subject was reading.  (R. at
213.) Napoleon testified that school "could be better" because he
had trouble with the subject matter, his teachers, and his own
conduct.  (R. at 215.)  Napoleon played the coronet in the school
band and participated in ROTC, which required him to march and
learn leadership qualitites.  (R. 218-19.)  He also testified
that he had a best friend from school, but that he only saw him
at school.  (R. at 217.)  Napoleon had a best friend from the
neighborhood as well, a 13-year-old boy at whose house he played
and who sometimes came over to his home.  (R. at 217.)  Napoleon
testified that he likes to play Nintendo and watch television and
that he does not perform any chores at home.  (R. at 216.)

Napoleon's guardian, Ms. Camino, also testified at the June
29, 1999 hearing.  (R. at 221.)  Ms. Camino testified that
Napoleon's teachers had informed her that Napoleon is often
"drawing or doing something" when he is supposed to be working,

4

because he gets disgusted when he is unable to finish with the rest of the students. (R. at 221.) Ms. Camino also testified that Napoleon was suspended for fighting in elementary school. (R. at 223.) She testified that the other children had been teasing him. (R. at 223.) Ms. Camino testified that, in the ninth grade, Napoleon had only one friend who would visit the house, the 13-year-old neighborhood boy that Napoleon had discussed in his testimony. (R. at 222.) She added that Napoleon also played with his 10-year-old and 12-year-old cousins. (R. at 222.) Ms. Camino testified that Napoleon was a junior deacon and a choir member at their church. (R. at 226.) Ms. Camino testified that Napoleon often forgets to do simple routine tasks, such as change for bed or check the mail. (R. at 222, 225.) Finally, Ms. Camino testified that Napoleon suffers from depression, for which he undergoes counseling and takes medication. (R. at 224-25.)

**B. Medical Evidence**

In December of 1995, after three months of declining academic achievement, Napoleon's therapist suggested that he undergo a psychological evaluation. (R. at 134.) Alaina Bacon, a psychology extern, conducted the evaluation under the supervision of Dr. Paul Metler. (R. at 134.) The evaluation

5

included IQ testing. (R. at 134.) The tests indicated that
Napoleon had a Full Scale IQ of 79, which is within the
borderline range of intelligence, a Verbal IQ of 102, which is
within the average range of intelligence, and a Performance IQ of
59, which is within the mentally retarded range of intelligence.
(R. at 135.) The low Performance score indicated problems with
tasks requiring visual motor ability, special integration,
perceptual-organizational skills, and attention and
concentration. (R. at 136.) The 43-point difference between his
verbal and performance scores was significant and prompted the
mental health professionals to suggest the possibility of an
organic basis for his poor performance. (R. at 135.) The mental
health professionals also observed emotional factors, such as
stress, anxiety, feelings of isolation, and a negative self-
image. (R. at 137-39.) They recommended small classroom
settings, alternative learning methods, and continued individual
psychotherapy. (R. at 140.)

In an August 7, 1997 report, psychiatrist Dr. Carl C. Bell,
("Dr. Bell") who began treating Napoleon in 1990, stated that
Napoleon was a well-mannered child who could not sit still. (R.
at 142.) Dr. Bell indicated that Napoleon was undergoing
psychotherapy and taking medication for depression resulting from

his abandonment by his mother and a history of abuse. (R. at 144.) Dr. Bell diagnosed Napoleon as having attention deficit, hyperactivity, and depressive disorders. (R. at 142, 144.) He also indicated that Napoleon had a math learning disability. (R. at 143.)

Robert Neufeld, Ph.D., conducted a psychological evaluation of Napoleon on September 17, 1997. (R. at 148.) His report indicated that Ms. Camino informed him that Napoleon "won't do anything on his own;" she explained that he only washes and dresses after being told to do so in the morning. (R. at 148.) Ms. Camino added that Napoleon would only perform these activities "halfway" and often acts as if he doesn't hear her. (R. at 148.) Dr. Neufeld observed no impairment in concentration or focusing. (R. at 149.) Napoleon's judgment was pro-social and indicated recognition of societal expectations of others, Dr. Neufeld stated. (R. at 149.) Dr. Neufeld also performed IQ testing. (R. at 148.) In this set of tests, Napoleon received a Full Scale IQ of 85, a Verbal IQ of 94, and a Performance IQ of 80. (R. at 148.) All scores fell in the low-average intelligence range. (R. 148.)

A 1999 Chicago Public Schools Individualized Education Program ("IEP") report indicated that Napoleon, who was in the

ninth grade at the time, was working at a seventh grade level in both English and math. (R. 182-83.) In his ninth grade spring semester, Napoleon earned Ds in all of his classes except algebra, in which he received a C, and ROTC, in which he earned an A. (R. at 126.) Mary Ann Wisdom ("Ms. Wisdom"), Napoleon's eighth grade learning disabilities teacher, reported in April of 1998 that Napoleon's attention span and ability to focus were limited. (R. at 171.) She stated that he had difficulty concentrating and that he required individual attention and additional time to complete his classroom assignments. (R. at 171.) Ms. Wisdom did not observe any problems with behavior, ability to get along with peers and teachers, or age-appropriate hygiene and self-care. (R. at 172.)

## C. The Medical Expert's Testimony

A medical expert, Psychiatrist Dr. Benjamin Blackman ("Dr. Blackman"), testified at Napoleon's hearing before the ALJ. (R. at 227.) Dr. Blackman testified that, when two sets of IQ scores conflict, more weight is generally afforded the higher scores, on the theory that they were unlikely to have been achieved by chance. (R. at 229.) Napoleon's extensive counseling seemed appropriate, given his family history, Dr. Blackman testified. (R. at 229.) The medical expert also testified that the reason

8

for Napoleon's low grades was unclear.  (R. at 229.)  Based on Napoleon's functioning, Dr. Blackman believed that Napoleon was without marked limitation, except with regard to his reading and math abilities.  (R. at 233-39.)

## D. The ALJ's Decision

In his August 25, 1999, decision, the ALJ found that the medical evidence established that Napoleon has an attention deficit/hyperactivity disorder and a depressive disorder.  (R. at 20.)  These disorders have more than a minimal impact on Napoleon's ability to function, the ALJ found.  (R. at 17.)  The ALJ concluded that the medical evidence does not establish, however, that the disorders create an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations 4.  (R. at 20.)  Nor do they result in two marked or one extreme functional limitation.  (R. at 20.)  Thus, the ALJ determined that Napoleon did not suffer from a "disability" as defined by the Social Security Act.  (R. at 20.)

The ALJ stated that there was no evidence establishing that Napoleon's impairments met or were medically equal to any listed impairment.  (R. at 19.)  The ALJ also held that there was insufficient evidence to support a diagnosis of medical

9

impairment assessing marked limitations.  (R. at 19.)  No
evidence existed to show a marked deficiency in
cognition/communication, social development, personal
functioning, or motor functioning,[3] the ALJ stated.  (R. at 19.)
The ALJ did find, however, that Napoleon's attention
deficit/hyperactivity disorder caused him marked limitations in
concentration, persistence, and pace.  (R. at 20.)  The ALJ
considered Napoleon's grades and teacher comments key to this
determination.  (R. at 20.)  Because the ALJ did not find at
least two marked functional limitations or one extreme functional
limitation, he concluded that Napoleon was not disabled.

## E. The Additional Evidence

After the ALJ hearing and decision, on May 4, 2001, Ms.
Camino submitted a psychological assessment of Napoleon to the
Appeals Council.  (R. at 8.)  The assessment was not available at
the hearing because the report was not completed until two weeks
later, on July 12, 1999.  Notably, the psychological evaluation
was performed before the June 29, 1999 hearing and the report was
completed before the ALJ issued his decision.  (R. at 9.)

---

[3] The ALJ never directly addressed motor functioning.
However, Plaintiff does not argue that substantial evidence
exists to support a conclusion that Plaintiff's motor functioning
was markedly limited.

Inexplicably, the ALJ was not informed that a psychological evaluation had been performed. The Community Mental Health Council conducted the assessment of Napoleon over six sessions, between May 3, 1999 and June 16, 1999. (R. at 9.) In this assessment, Napoleon's Full Scale IQ score was 71, his Verbal score was 84, and his Performance score was 63. (R. at 200.) Napoleon's Full Scale IQ falls within the borderline range, his Verbal score falls within the low average range, and his Performance score falls within the mentally deficient range. (R. at 200.) The psychological evaluation also indicated problems in processing and organization, socialization, and self-care. (R. at 200-06.)

**F. The Appeals Council's Decision**

On October 4, 1999, Ms. Camino filed a timely request with the Appeals Council for review of the ALJ's decision, in light of the additional psychological evaluation of Napoleon. (R. at 9, 12.) In its July 23, 2001 decision, the Appeals Council stated that it had considered the changed Social Security Administration regulations and the additional evidence submitted, and concluded that neither provided a basis for reversing the ALJ's decision. (R. at 5.)

## Analysis

Plaintiff makes three basic requests in this appeal: 1) that this Court reverse the decision by the Appeals Council to deny review of his case based on the new and material evidence; 2) that this Court reverse or remand the ALJ's decision, because the ALJ's ruling was incorrect based on recent changes in the Social Security Administration's standards for determining whether a child is disabled; or 3) that this Court remand the ALJ's decision to allow the Commissioner to consider the additional evidence submitted after the ALJ issued his decision.  The Court will address each request separately.

### A. The Appeals Council's Decision

First, the Court will consider whether the Appeals Council erred when it refused to grant a full review of the ALJ's decision.  Plaintiff argues that the additional 11-page psychological assessment he submitted warranted a review of the ALJ's conclusions, and that the Appeals Council erred in refusing to grant one.

Evaluation of the Appeals Council's decision depends in part on 20 C.F.R. § 404.970(b), which provides:

> If new and material evidence is submitted, the Appeals
> Council shall consider the additional evidence only
> where it relates to the period on or before the date of

the administrative law judge hearing decision. The
Appeals Council shall evaluate the entire record
including the new and material evidence submitted if it
relates to the period on or before the date of the
administrative law judge hearing decision. It will
then review the case if it finds that the
administrative law judge's action, findings, or
conclusion is contrary to the weight of the evidence
currently of record.

The regulation requires the Appeals Council to consider new and

material evidence. Whether the Appeals Council committed an

error of law in applying this regulation must be determined under

a *de novo* standard of review. *Eads v. Secretary of the*

*Department of Health and Human Services*, 983 F.2d 815, 817 (7th

Cir. 1993). Unless the Appeals Council erred by failing to

consider new and material evidence or committed some other error

of law, its decision is discretionary and unreviewable. *Damato*

*v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1992).

Plaintiff argues that the Appeals Council committed just

such an error of law by failing to consider the additional

psychological evaluation, which was new and material evidence

supporting Plaintiff's claim of disability. However, the

Commissioner does not contest that the psychological evaluation

was new and material. Instead, the Commissioner asserts that the

Appeals Council did consider the evaluation, but concluded that

it did not warrant reversing the ALJ's decision. In support of

her claim that the Appeals Council considered the evaluation to be new and material, the Commissioner notes that the Appeals Council only considers new and material evidence. Therefore, when the Appeals Council stated that it had "considered" the additional psychological evaluation, it admitted that the evidence was new and material.

Though circular, this argument has merit. The Appeals Council is not required to articulate its consideration of additional evidence or the reasoning behind its decision when it denies a request for review. *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1992). Therefore, by stating in one sentence that it had "considered" this additional evidence, the Appeals Council adequately classified the evidence as new and material. It was not required to then grant a full review unless it concluded that the ALJ's decision appeared to be against the weight of the evidence currently of record, including the additional report. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). The Appeals Council concluded that, despite the new evidence, the ALJ's decision was not against the weight of the evidence. Since the Court can find no error of law, the Appeals Council's decision is discretionary and unreviewable. *Damato*, 945 F.2d at 988. Therefore, the Appeals Council's denial of review stands.

## B. Reversal of the ALJ's Decision

The Plaintiff also asks this Court to reverse the ALJ's decision, arguing that it was not supported by substantial evidence. The Court must uphold the ALJ's decision if it is based on correct legal standards and supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002), quoting *Richardson v. Perales*, 91 S.Ct. 1420 (1971). Even if some evidence supports the claimant's position, the Court must affirm the ALJ's ruling where his findings are supported by substantial evidence. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993). If reasonable minds could disagree about whether the claimant is disabled, the Court must affirm the ALJ's decision to deny benefits. *Schmidt*, 201 F.3d at 972. While deferential, this standard of review is not an uncritical rubber stamp. *Schroeter v. Sullivan*, 977 F.2d 391, 394 (7th Cir. 1992).

Plaintiff next claims that there is a lack of substantial evidence to support the ALJ's denial of benefits, when that decision is reviewed under the new Social Security Administration rules governing standards for determining whether a child is

disabled.  The ALJ decided this case based on the rules

applicable at the time of the ALJ hearing, those in place between

February 1997 and January 2001.  Under the old rules, a claimant

could be awarded benefits for mental retardation if he could be

termed "disabled" under one of several provisions.  20 C.F.R. Pt.

404, Subpt. P, App. 1, §112.05.  Among the possibilities,

Napoleon could have been termed "disabled" if he could show that

he had an IQ score of 59 or less; if he could show that he had an

IQ score between 60 and 70 and had a marked impairment in social

functioning, personal functioning, or maintaining concentration,

persistence, or pace; or if he could demonstrate an impairment

that functionally equaled the severity of an impairment in the

listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05; 20

C.F.R. § 416.924 (1998).  To evaluate functional equivalence, the

Commissioner most frequently determined whether a child had

marked limitations in two broad areas of functioning, or an

extreme limitation in one area.  20 C.F.R. § 416.926a(b) (1998).

Under the old rules, five areas, or domains, of functioning

existed: 1) cognition/communication, 2) social development, 3)

motor functioning, 4) personal functioning, and 5) concentration,

persistence, and pace.

In his decision, the ALJ determined that Napoleon was not disabled under any of these definitions. The ALJ found that the only option under which Napoleon might have qualified, was functional equivalence. However, the ALJ held that Napoleon had only a marked impairment in one area, "concentration, persistence, and pace."

The Social Security Administration released new rules governing disability claims in September of 2000; those rules became effective January 2, 2001. 65 Fed. Reg. 54, 747. Because Napoleon's request for judicial review was still pending when the new regulations took effect, the Court must evaluate the ALJ's decision under the new regulations. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). The new rules contain similar guidance for determining functional equivalence. Again, a claimant must show a marked limitation in two areas or domains, or an extreme limitation in one area or domain. 20 C.F.R. § 416.926(a). The new rules spell out six new domains, however, instead of five. The new areas for consideration are: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for yourself, and 6) health and physical well-being. 20 C.F.R. § 416.926(b). The old domain of concentration,

persistence, and pace equates with attending and completing tasks. Therefore, this Court must determine whether substantial evidence existed, as of the hearing before the ALJ, to deny a marked limitation in each of the other five domains. Under both sets of rules, a "marked" limitation is defined as "more than moderate" but "less than extreme." 20 C.F.R. § 461.926a(e)(2); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05(C). A marked limitation exists where a claimant's impairment seriously interferes with the child's ability to function independently. *Id.*

Plaintiff argues that Napoleon's grades, disparate IQ scores, learning disability, need for special education, and psychological evaluations demonstrate a marked impairment in acquiring and using information. (Pl.'s Memm. Supp. S. J. at 9-10.) Additionally, he argues that the evidence[4] demonstrates a limitation in self-care, and that his lack of close friendships, socialization with younger children, and general withdrawal indicate a marked limitation in interacting and relating with others. (Pl.'s Mem. Supp. S.J. at 10.) Each of the three domains that Plaintiff has identified substantially correlates with one of the old rules: acquiring and using information

---

[4] Presumably, Plaintiff refers to Ms. Camino's testimony that he only washes and changes for bed when instructed.

parallels cognition/communication; self-care matches personal

functioning; and interacting and relating with others equates

with socialization.[5] In assessing Napoleon's cognition/

communication abilities, the ALJ relied on the ME's testimony

that Napoleon's higher IQ scores were more accurate than his

previous scores, and this testimony indicated that Napoleon did

not demonstrate a marked impairment in cognition/communication.

The Court finds that this constitutes substantial evidence to

support the conclusion that Napoleon did not demonstrate a marked

impairment in acquiring and using information.

In addition, the ALJ considered comments from Napoleon's

teacher that he did not demonstrate any deficiencies in age-

appropriate self-care, and testimony from Napoleon and Ms. Camino

that Napoleon was active in the school band and ROTC and had

several friends, including a best friend in his age group.

Though not overwhelming, this evidence was substantial enough for

---

[5] The Commissioner examines the same factors "IQ tests, speech patterns, comprehension, etc." under both acquiring and using information and cognition/communication. Self-care and personal functioning also involve the same considerations: the child's ability to take care of his own personal needs, health, and safety independently. Finally, interacting and relating with others and socialization both deal with relationships between the child and peers in his age group and family, the child's ability to function in group activities, such as team sports, and the child's ability to follow orders and respond to authority figures.

a reasonable person to conclude that Napoleon does not have a marked deficiency in either personal functioning or socialization. By extension, the Court finds that this also constitutes substantial evidence that Napoleon is not markedly limited in the areas of self-care and interacting and relating with others. To determine a limitation under these two new domains, the Commissioner would examine the same factors she did under the two old domains. In addition, the level of severity needed for a determination of a "marked limitation" is also identical. As such, the Court finds that the new regulations do not impact the reliability of the ALJ's decision, in this case.

Perhaps reasonable minds could disagree over whether the evidence presented at the hearing before the ALJ supported a finding that Napoleon had a marked impairment only in concentration, persistence, and pace, or attending and completing tasks, but in such cases, the reviewing court must defer to the ALJ's conclusions. Because the new domains so closely parallel the prior domains, and because the ALJ determined that Plaintiff's evidence failed to establish a marked limitation in two or more areas, the Court declines to reverse or remand the ALJ's decision based on a change in the Social Security Administration regulations.

## C. Remand for Consideration of Additional Evidence

Finally, Plaintiff requests that this Court remand his case to allow the Commissioner to consider the additional psychological evaluation submitted to the Appeals Council after the ALJ issued his decision. The additional report offers a Performance IQ score in the 60 to 70 range and evidence that could support a conclusion that Napoleon suffers marked limitations in acquiring and using information, self-care, and interacting and relating with others. Therefore, Plaintiff argues, the ALJ could conclude that Napoleon suffers a listing disability or a functionally equivalent disability under the new regulations.

A court may remand a case for the consideration of additional evidence only if the evidence is new and material, and the claimant has offered good cause for not introducing it during the administrative proceedings. 42 U.S.C. § 405(g).[6] The Commissioner has conceded that, because the Appeals Council considered the additional report, the evidence was new and material. The Court will address the issue independently,

---

[6]Section 405(g) provides: The court. . .may at any time order additional evidence be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

21

however. Evidence is new only if it did not exist, or was otherwise unavailable to the claimant at the time of the administrative proceeding. *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993), *citing Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). If there is a reasonable probability that the ALJ might have decided the case differently had he or she considered the additional evidence, that evidence is material. *Shalala*, 999 F.2d at 1144 (holding that a treating physician's view that a patient's impairments equaled the listing requirements might influence the ALJ's decision).

Here, the physicians did not complete the additional psychological evaluation until approximately two weeks after the ALJ hearing. Therefore, because the psychological evaluation did not exist until after the proceeding, the report is new. Additionally, the evaluation includes a new IQ score within the range required for mental retardation and a treating physician's view that Napoleon's impairments equaled the listing requirements for functional equivalence. There is a reasonable probability that the ALJ might have decided the case differently based on the evidence, therefore the psychological evaluation is material.

The only remaining question is whether the claimant has demonstrated good cause for not submitting the evaluation during

the administrative proceedings. In *Sears v. Bowen*, the court
found that the claimant had shown good cause for not submitting a
psychiatric report supporting a finding that the claimant was
unable to work and was totally disabled. *Sears v. Bowen*, 840
F.2d 394, 397, 399 (7th Cir. 1988). The claimant in *Sears* did
not begin seeing the psychiatrist until after his ALJ hearing,
and the report did not exist until after the Appeals Council had
denied his claim. *Id.* at 399. In addition, though the report
was not complete until after the Appeals Council released its
decision, in his statement to the Appeals Council, the claimant
called attention to the treatment he was receiving. *Id.* The
Court also found it critical that the claimant was represented by
lay advocates instead of legal counsel. *Id.* at 400.

The facts of this case are inapposite. While the *Sears*
claimant did not begin his treatment until after the ALJ hearing,
Napoleon's evaluation took place between May 3, 1999 and June 16,
1999. Napoleon completed his evaluation two weeks before his
hearing. Nevertheless, neither the claimant nor his attorney
informed the ALJ at the hearing that he had been evaluated.
Plaintiff compounded this oversight by failing to direct the
ALJ's attention to the evaluation when it was completed before
the ALJ issued his decision. Finally, the claimant was

represented by counsel. Therefore, it is not evident, as it was in *Sears*, that the claimant was uninformed in procedural matters. The claimant has not shown good cause for failure to submit the additional evidence at an earlier proceeding. Therefore, this Court will not remand the case on that basis.

### Conclusion

For the foregoing reasons, the Court denies Plaintiff's motions and grants the Commissioner's Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion for Summary Judgment be, and the same hereby is, **GRANTED.**

DATED:   October 18, 2002     ENTER:


ARLANDER KEYS
United States Magistrate Judge

24